***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence and amendments to the Opinion and Award are consequently made herein.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly denominated in the caption.
2. An Employee/Employer relationship as defined by N.C. Gen. Stat. § 97-2(2) existed between the parties on January 24, 2005. *Page 2 
3. Plaintiff sustained a debilitating spinal cord injury while working for Amerlink on January 24, 2005.
4. Plaintiff's compensation rate is $346.68.
5. Defendants accepted plaintiff's claim as a compensable workers' compensation claim.
6. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
7. All parties are properly before the Commission for hearing and the Commission has jurisdiction of the parties and the subject matter.
8. Plaintiff is permanently and totally disabled.
9. Pursuant to Post Hearing Stipulations filed by Defendants on February 6, 2008, Defendants stipulated and agreed to:
 a. Provide and pay for periodic service, fuel and maintenance of plaintiff's emergency generator.
 b. Modify plaintiff's existing kitchen island countertop per expert's recommendations.
 c. Modify plaintiff's existing bathroom countertop per expert's recommendations.
 d. Fix and/or modify plaintiff's outside doors per expert's recommendations.
 e. Provide language program for plaintiff's computer.
 f. Provide voice activated telephone.
 g. Provide call system for plaintiff to contact attendants.
 h. Repair and maintain plaintiff's Gullman Lift. *Page 3 
 i. Provide environmental control system per expert's recommendations that will control lights, TV, all doors and call system.
10. The depostions of the following are a part of the record:
 a. Dr. Patrick O'Brien
 b. Michael Rudder
 c. Darrell Jones
 d. Edward R. Gillam
 e. James A. Holtvedt
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: plaintiff's Medical Records
 (c) Stipulated Exhibit 3: Set of Stipulated Exhibits
 (d) Stipulated Exhibit 4: Medical Expenses Paid by Defendants
 (e) Stipulated Exhibit 5: Defendants' Post Hearing Stipulations
 *********** ISSUES (a) What additional home modifications, if any, should Defendants be required to provide plaintiff?
 (b) Whether plaintiff is entitled to a ten percent (10%) increase in compensation? *Page 4 
 (c) Whether Defendants are entitled to a ten percent (10%) reduction in plaintiff's compensation?
 (d) Whether plaintiff's service providers are entitled to payment of an additional ten percent (10%) calculated on all bills not timely paid by Defendants?
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by Amerlink on January 24, 2005.
2. While working for Amerlink, plaintiff's job duties included pushing up grass and topsoil, building burms, grading, and putting down stone.
3. Plaintiff also operated Amerlink's heavy equipment, such as its bulldozer and backhoe.
4. Michael Rudder ("Rudder") worked for Amerlink and supervised both plaintiff and another employee named Darrell Jones ("Jones").
5. On the morning of January 24, 2005, Rudder, plaintiff, and Jones loaded a bulldozer owned by Amerlink onto a gooseneck trailer that Amerlink also owned.
6. Plaintiff did not drive the bulldozer all the way up the front of the trailer and lock the brake down on the front of the trailer because Rudder told him to stop.
7. Safety chains/binders were not used by Rudder, Jones, and plaintiff to secure the bulldozer the first time that it was loaded onto the trailer on January 24, 2005. *Page 5 
8. Rudder did not tell plaintiff and Jones that they needed to chain down the bulldozer, and he, as their supervisor, did not chain down the bulldozer.
9. In regard to safety chains/binders/straps for the bulldozer, it is unclear that they actually were available on January 24, 2005.
10. It was common on Amerlink property in 2005 for Amerlink employees to trailer bulldozers without chaining/strapping them down.
11. It was common on Amerlink property in 2005 for Amerlink bulldozer operators not to wear a seat belt.
12. No one at Amerlink told plaintiff that he had to chain/strap down the bulldozer to the trailer.
13. No one at Amerlink told plaintiff that he needed to wear his seatbelt while riding in the bulldozer.
14. No one at Amerlink told plaintiff not to ride in the bulldozer while it was trailered.
15. Plaintiff and Jones trailered the bulldozer a second time on January 24, 2005 in the exact same manner that Rudder, their supervisor, helped them trailer it the first time that same day.
16. While Jones was driving the trailer across the road with plaintiff in the bulldozer, the trailer jerked and threw the bulldozer and plaintiff off of the trailer. Plaintiff landed on his neck, shoulders, and head, causing him to be paralyzed from the neck down.
17. Plaintiff's actions on January 24, 2005 were at most careless, inadvertent and negligent, not willfull. Likewise, Amerlink's actions were at most negligent and not a willful failure to comply with statutory requirements. *Page 6 
18. Plaintiff's counsel has written AIG Claims Services ("AIG"), the Third Party Administrator, regarding a number of unpaid bills, including bills from Heritage Hospital, Ward Drug Company, Boice Willis Clinic, Nash County Ambulance Services, North Carolina Emergency Physicians, Nash County EMS, and Litte River Gas Company (for plaintiff's backup emergency generator). However, on the whole AIG has not acted unreasonably in relation to payment of these bills.
19. James A. Holtvedt ("Holtvedt"), the individual chosen by the parties for a residential assessment, is an expert in ergonomics and rehabilitation.
20. At the back of plaintiff's handicapped accessible home which Defendants built specifically for him, there already exists a covered area over the ramp which extends from his back door to the driveway. While Holtvedt recommended that Defendants construct a 20'x20' covered carport extending out from the existing roofline at the left rear corner of plaintiff's home, Dr. Patrick O'Brien ("O'Brien"), plaintiff's treating physician, recommended that at most a small overhang be provided. Further, there is evidence that with some minimal effort, the drivers of the van could pull up to the existing covered area in such a manner that plaintiff would not be exposed to inclement weather when exiting or entering the van. Certain driveway markers and groves could be utilized to assist the driver to locate the appropriate placement of the van. As an additional solution, one of the two or three aides assisting plaintiff could hold an umbrella over plaintiff when required. Thus, based upon the greater weight of the evidence, the 20' x 20' covered carport is not medically necessary or reasonably required to give plaintiff relief.
21. Holtvedt further recommended that Defendants install a rain gutter from the left side of the front dormer of plaintiff's house across to the left end of the roof to reroute water run-off from the wheelchair ramp that plaintiff uses to access his home at the front. However, since *Page 7 
plaintiff should use the covered back ramp during inclement weather so as not to be exposed to the elements, he will not need to use the front ramp during such periods of time. Thus, based upon the greater weight of the evidence, the front rain gutter is not medically necessary or reasonably required to give plaintiff relief.
22. Plaintiff testified that he has difficultly reaching the computer in his office and has requested that Defendants provide a new computer desk designed to remedy the problem. However, Holtvedt recommended that plaintiff's computer be placed on the kitchen counter, once the counter is modified according to his recommendations. Based upon the recommendations by Holtvedt, a new computer desk in plaintiff's office is not medically necessary or reasonably required to give plaintiff relief.
23. Plaintiff has requested that Defendants pay for his home and yard to be exterminated for insects. However, plaintiff has failed to offer expert medical testimony to establish that Defendants providing extermination services is medically necessary or reasonably required to provide relief for plaintiff's workers' compensation injury. This service is not medically necessary or reasonably required to give plaintiff relief.
24. Plaintiff is unable to enter his sister's or father's home because the entry doors are not wide enough and there is not a wheelchair ramp. However, Holtvedt recommended remedying this situation because it would improve plaintiff's quality of life which "can have a direct impact on our mental and physical status". However, Holtvedt is not qualified to make recommendations based upon plaintiff's psychological condition. No qualified expert testified to establish that plaintiff's relatives' homes should be modified as treatment for a psychological condition related to his compensable injuries. Thus, this request is not medically necessary or reasonably required to give plaintiff relief. *Page 8 
25. During his testimony, plaintiff for the first time raised concerns regarding his home healthcare service provider, Maxim. However, no expert medical testimony was offered to establish that Maxim's healthcare services have been inadequate. Thus, plaintiff has failed to establish that his home healthcare services provider should be changed from Maxim to a different provider.
 ***********
Based upon the foregoing findings of fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW
1. The recommendations made by Holtvedt for home modifications for a 20' x 20' carport, a front rain gutter and a ramp for plaintiff's relative's home and plaintiff's request that Defendant's pay for extermination of home and yard are not medically necessary or reasonably required to give plaintiff relief. Thus, Defendants are not required to pay for these modifications. N.C. Gen. Stat. § 97-2(19).
2. Plaintiff is not entitled to a ten percent (10%) increase in compensation and Defendants are not entitled to a ten percent (10%) reduction in plaintiff's compensation as their actions at most were careless, inadvertent and negligent, not willful. N.C. Gen. Stat. § 97-12.
3. For services rendered under N.C. Gen. Stat. § 97-25, the service providers are entitled to payment of an additional ten percent (10%) calculated on all bills when it is established that properly submitted bills were not timely paid by Defendants pursuant to the provisions of N.C. Gen. Stat. § 97-18(i). This matter is to be handled by the defense attorney working through the insurance carrier with the medical providers without requiring plaintiff's attorney's involvement. *Page 9 
4. Defendants are not required to replace Maxim, the company providing home healthcare services to plaintiff.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Other than the modifications agreed upon in Post Hearing Stipulations, Defendants are not required to provide and pay for the further modifications to plaintiff's house, specifically including a 20'x20' covered carport, a rain gutter across the front of plaintiff's house, or a ramp for plaintiff's relative's home.
2. For services rendered under N.C. Gen. Stat. § 97-25, Defendants shall pay the medical providers an additional ten percent (10%) calculated on all bills when it is established that properly submitted bills were not timely paid by Defendants pursuant to the provisions of N.C. Gen. Stat. § 97-18(i). This matter is to be handled by the defense attorney working through the insurance carrier with the medical providers without requiring plaintiff's attorney's involvement.
3. Defendants shall pay the costs due the Commission.
This the 17th day of November 2008.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
 CONCURRING: *Page 10 
 S/___________________ BERNADINE BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER *Page 1